UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| NATHAN MEYER,<br><br>           Plaintiff,<br><br>   vs.<br><br>LT. ROHRSCHEIB,<br><br>           Defendant. | NO. CV-09-22-EFS<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |

    Before the Court, without oral argument, is Defendant Michael Rohrscheib's Motion for Summary Judgment. (Ct. Rec. 29.) Plaintiff Nathan Meyer, a prisoner at Coyote Ridge Corrections Center in Connell, sues for alleged civil rights violations arising out of restrictions placed on his mail while he was housed at Spokane County Jail. Rohrscheib's motion was filed on January 6, 2010. On January 7, 2010, the Court sent a *Klingele* notice to Meyer advising him of the effect of a successful motion for summary judgment and informing him that he was obligated to respond. (Ct. Rec. 35.) On the same day, Meyer filed a Second Amended Complaint (Ct. Rec. 36). After noting that the summary judgment motion applies equally to the Second Amended Complaint, the Court extended the deadlines for Meyer's response to the motion for summary judgment to March 16, 2010 (Ct. Rec. 39). Meyer never filed a response to the summary judgment motion, although he did file a motion

ORDER ~ 1

in which he requested an additional extension and appointment of counsel, which the Court denied. (Ct. Rec. 42.) For the reasons given below, the Court grants Rohrscheib's motion and dismisses Meyer's claims.

## I. Background[1]

Meyer was arrested on October 8, 2008, for assaulting his cohabiting girlfriend. (Ct. Rec. 31 at 2.) On October 28, 2008, he was arraigned on one count of second-degree assault and one count of unlawful imprisonment. The presiding judge at the arraignment issued Meyer a no-contact order prohibiting him from contacting the victim by any means, including contact through third persons. (Ct. Rec. 32 Ex. 5.) Meyer was confined at Spokane County Jail while the charges were pending. (Ct. Rec. 31 at 2-3.) During that time, Rohrscheib, Custody Corrections Lieutenant at the Spokane County Jail, was in charge of jail

---

[1] The following statement of facts is based on the affidavits of Michael Rohrscheib and Gayle Ervin (Ct. Recs. 31 & 32). Although the Court must view all facts in the light most favorable to the non-moving party, in this case Meyer, Meyer submitted no materials in connection with this motion, so the Court must accept the uncontroverted materials submitted by Rohrscheib as true. Because Rohrscheib supported his motion with affidavits, Meyer was required to set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e)(2); *Silva v. Fire Ins. Exch.*, 647 F. Supp. 1397, 1399 (D. Mont. 1986). Meyer failed to do so, and he may not rely on his pleadings.

ORDER 2

security and compliance with disciplinary rules. *Id.* at 2.

On November 4, 2008, Spokane County Jail received an order from Spokane County Superior Court restricting Meyer's telephone access. (Ct. Rec. 31 Ex. 2.) The court issued that order because Meyer used jail telephones to flout the no-contact order by calling the victim no fewer than thirty-four times between October 14, 2008, and October 23, 2008. *Id.* In the course of those calls, Meyer threatened the victim with physical violence and pressured her to recant her accusations to law enforcement. *Id.* The new court order restricted Meyer's telephone use to calls to his attorney until further notice. *Id.* Because Meyer violated the no-contact order, Spokane County Deputy Prosecutor Gayle Ervin filed additional charges against Meyer. (Ct. Rec. 32 at 4.) Following the new charges, on November 19, 2008, the Spokane County Superior Court issued another no-contact order identical to the October 28, 2008 order, prohibiting all contact with the victim. *Id.* Ex. 8.

Meyer was a steadfast man, and not one to be deterred by new charges, withdrawal of telephone privileges, a renewed no-contact order, or even the prospect of castration.[2] He continued to find ways to contact the victim in violation of court orders. On December 4, 2008, the investigator assigned to Meyer's case e-mailed Ms. Ervin to inform her that Meyer was sending mail intended for the victim to his uncle. *Id.* at 5. The uncle was then passing the mail on to the victim. *Id.* Ms. Ervin advised Rohrscheib of the violations and asked him to restrict Meyer's

---

[2] One of the victim's relatives took the victim's telephone during one of Meyer's recorded calls from jail and graphically described how it would be done. The call ended abruptly. (Ct. Rec. 32 Ex. 7 at 2.)

ORDER ~ 3

mail. (Ct. Rec. 31 Ex. 4.)

Rohrscheib agreed, responding "[W]e will stop his mail now." *Id.* From that time on, Rohrscheib personally monitored all outgoing mail except mail labeled "LEGAL." *Id.* at 5. He claims he did not monitor Meyer's incoming mail or restrict Meyer's visitors, although he also claims that he would have reviewed some incoming letters from Meyer's uncle because he believed they might have contained impermissible communication with the victim. *Id.* at 5, 8.

Meyer filed a written grievance challenging the restrictions on his outgoing mail, which Rohrscheib denied. (Ct. Rec. 31 Ex. 8.) Meyer did not appeal. *Id.* at 6.

On May 26, 2009, Meyer was convicted and a few days later was transferred out of Spokane County Jail into a Washington State Department of Corrections prison to serve his remaining sentence. *Id.* at 7. After the transfer, Rohrscheib looked through his desk and discovered four letters addressed to Meyer from his uncle. The uncle sent the letters in February and March 2009. *Id.* Ex. 9. Rohrscheib inadvertently did not pass them on to Meyer earlier. *Id.* On July 31, 2009, Rohrscheib sent them to Meyer with an apology at Meyer's prison address. *Id.*

## II. Analysis

**A. Standard**

Summary judgment is appropriate if the "pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Once a party has moved for summary judgment, the opposing party must point to

ORDER ~ 4

specific facts establishing that there is a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). If the nonmoving party fails to make such a showing for any of the elements essential to its case for which it bears the burden of proof, the trial court should grant the summary judgment motion. *Id.* at 322. "When the moving party has carried its burden of [showing that it is entitled to judgment as a matter of law], its opponent must do more than show that there is some metaphysical doubt as to material facts. In the language of [Rule 56], the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586-87 (1986) (citations omitted) (emphasis in original opinion).

When considering a motion for summary judgment, a court should not weigh the evidence or assess credibility; instead, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). This does not mean that a court will accept as true assertions made by the non-moving party that are flatly contradicted by the record. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

**B. Exhaustion of Administrative Remedies**

Under the Prison Litigation Reform Act of 1996, an inmate must exhaust administrative remedies before filing suit to challenge prison

ORDER 5

conditions in federal court under § 1983. 42 U.S.C. § 1997e(a). Administrative exhaustion means the prisoner took all steps for relief the prison offers, even if the prisoner seeks relief not available through a grievance, such as money damages. *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009) (citations and internal quotation marks omitted).

Rohrscheib argues that Meyer failed to exhaust all administrative remedies because he did not appeal the denial of the grievance. Rohrscheib says that under Spokane County Jail policy an inmate can seek review of a supervisor's denial of a grievance with the disciplinary review board. (Ct. Rec. 31 at 6.) Although this assertion is not challenged, the Court hesitates to accept that an administrative appeal is available because it is not supported by documentary evidence outside the affidavit. Although it is uncontroverted that Meyer did not appeal the grievance denial, out of an abundance of caution the Court examines his claims on the merits and finds Meyer's claims come up short.

**C. Constitutional Violations**

The basis of Meyer's § 1983 claim is that Rohrscheib restricted his mail and mistakenly forgot to give him some letters for a few months.[3]

---

[3] Although Meyer asserts in the Second Amended Complaint that Rohrscheib restricted all of his incoming and outgoing mail without a court order, that his attorney sent him several letters he never received, and that he has been denied all contact with the outside world, Meyer did not meet his burden of countering Rohrscheib's undisputed affidavits. Accordingly, the Court does not accept the

ORDER 6

After reviewing the relevant authorities, the Court concludes that Meyer has no claim for constitutional violations.

A prisoner has a First Amendment right to send and receive mail. *Witherow v. Paff*, 52 F.3d 264, 265 (9th Cir. 1995). A prisoner's ability to send mail may be restricted, however, if the restriction is generally necessary to protect a legitimate government interest. *Procunier v. Martinez*, 416 U.S. 396, 413 (1974) (overruled in part on other grounds in *Thornburgh v. Abbott*, 490 U.S. 401 (1989)). Also, a prisoner's ability to receive mail may be restricted if the restriction is reasonably related to a legitimate penological interest. *Abbott*, 490 U.S. at 404 (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)).

The Spokane County Jail's restriction on Meyer's outgoing mail was necessary to protect a legitimate government interest. Meyer was prohibited from having contact with his victim while he was housed at the Spokane County Jail. The no-contact order in place at the time made it a crime for Meyer to have such contact. As the Supreme Court recognized, jails may stop ongoing criminal activity perpetrated through mail leaving prisons. *Procunier*, 416 U.S. at 413. Because Meyer's attempted communication with the victim through letters to his uncle constituted criminal violations, the jail had a legitimate interest in screening the letters. Removing the offending correspondence was the only method of preventing continued violations. *See also Samford v. Dretke*, 562 F.3d 674, 680 (5th Cir. 2009) (holding that protecting crime victims from unwanted communications from prisoners is a legitimate

---

assertions from Meyer's complaint.

ORDER 7

interest and upholding restrictions of such communications under the *Turner* reasonableness test adopted by the Fifth Circuit for outgoing mail); *Jensen v. Pennington County Police Dep't*, No. CIV. 09-5006, 2009 WL 1475037, at *3 (D.S.D. May 22, 2009) (holding that letters from an inmate to persons with whom the inmate has been ordered to have no contact may constitutionally be restricted).

Although Rohrscheib claims that he did not search Meyer's incoming mail, elsewhere he asserts that he would have examined mail addressed to Meyer coming from his uncle's address. (Ct. Rec. 31 at 8.) The Court concludes that the restrictions on Meyer's incoming mail, which are subject to the more deferential *Turner* reasonableness test, were constitutional. As discussed, the Spokane County Jail had a legitimate penological interest in preventing Meyer from committing additional violations by communicating with and threatening the victim, and preventing him from receiving mail from the victim was reasonably related to that goal.

To the extent that Meyer claims violations because Rohrscheib delayed four to five months in delivering four letters from Meyer's uncle, his claims must be dismissed because such deprivations do not amount to a constitutional violation. At most, Rohrscheib's oversight amounted to negligence, which he eventually corrected. A negligent delay in handing over an inmate's mail does not implicate the due process clause. *Stevenson v. Koskey*, 877 F.2d 1435, 1441 (9th Cir. 1989); *Valiant-Bey v. Morris*, 829 F.2d 1441, 1444 n.5 (8th Cir. 1987); *Strong v. Woodford*, 428 F. Supp. 2d 1082, 1086 (C.D. Cal. 2006); *see also*

ORDER 8

*Daniels v. Williams*, 474 U.S. 327, 333 (1986). Meyer did not allege that Rohrscheib intentionally withheld the letters that Rohrscheib eventually sent to Meyer, much less bring forth competent evidence to prove intentional withholding.

### III. Conclusion

Any injury that Meyer suffered resulted either from jail policies necessary to protect the victim from criminal harassment and threats or from non-actionable carelessness by Rohrscheib. Rohrscheib did not violate Meyer's constitutional rights.

Accordingly, **IT IS ORDERED:**

1) Defendant's Motion for Summary Judgment **(Ct. Rec. 29)** is **GRANTED**.

2) The Clerk of the Court is directed to **ENTER** Judgment in Defendant's favor.

3) This case is **CLOSED**.

**IT IS SO ORDERED**. The District Court Executive is directed to enter this Order and forward a copy to counsel and to Plaintiff.

**DATED** this ___5th___ day of April 2010.

                              S/ Edward F. Shea
                              EDWARD F. SHEA
                     United States District Judge

`Q:\Civil\2009\22.SJ.wpd`

ORDER 9